CULPEPPER, Judge.
The plaintiff, David M. Bell, filed this suit for damages for personal injuries under the Jones Act and general maritime law. He named as defendants National Boat Corporation, the owner of the vessel on which he was working at the time he sustained the injury, and Taylor’s Welding Service, Inc., his employer at the time of the accident. Prior to trial, plaintiff compromised his claim against National Boat Corporation and its insurer for the sum of $26,290, plus an additional sum up to $3,710 to be paid in the event Bell failed to recover the total of these sums from Taylor.
In the trial in the district court, a jury returned a verdict in favor of plaintiff and against defendant, Taylor’s Welding Service, Inc., for the sum of $36,000. Taylor’s third party demand against National Boat Corporation was rejected because the jury found the vessel seaworthy and found no negligence by National Boat Corporation or its captain. The district court entered judgment on the jury verdict, denying Taylor and its insurer any credit for the amount received by plaintiff in his settlement with National Boat Corporation. The district judge also rejected the claim of Taylor’s insurer for reimbursement of $3,710 paid to plaintiff in workmen’s compensation benefits, but recognized Taylor’s insurer’s claim for the sum of $3,058.72 paid to plaintiff for medical expenses and cure.
Taylor and its insurer appealed the judgment against them in favor of plaintiff. They also appealed from the judgment rejecting their third party demand against National Boat Corporation. The interve-nor, North-West, appealed from the judgment rejecting its claim for reimbursement for workmen’s compensation payments.
*329 The decisive issues are: (1) Was the plaintiff a seaman? (2) Was Taylor’s Welding Service, Inc. an employer under the Jones Act? (3) Was Taylor’s Welding Service, Inc. guilty of any negligence which was a cause of the accident ?
Taylor’s Welding Service, Inc., principally owned by Larry Taylor, was engaged in the business of supplying welding services for offshore well platforms. Taylor contracted to do certain welding repair work on a production platform of Mobil Oil Corporation, about 40 miles off the shore of Cameron Parish, Louisiana. Under the agreement, Taylor furnished the necessary labor, equipment and supplies to perform the welding. Mobil Oil supplied the vessel to transport Taylor’s crew to the platform, the vessel to be available to Taylor’s crew for living quarters and as a base for the repair work, some of which was near and below water level on the platform.
Taylor designated plaintiff as foreman of the welding crew, which consisted of a welder and a helper. Mobil gave plaintiff instructions as to the work to be done. Mobil also contracted with National Boat Corporation to supply the vessel, State-Race, and a crew consisting of a captain, an engineer and a deckhand.
Under Bell’s supervision, Taylor’s welding crew and all of their equipment and materials were loaded onto the State-Race in Cameron, Louisiana at the Mobil docks. A diving crew, not furnished by Taylor and not under Bell’s supervision, also boarded the vessel with its equipment. The vessel proceeded to the platform. As foreman of Taylor’s crew, plaintiff advised the captain where he wanted the vessel positioned to perform the welding. The diving crew also advised the captain as to the position in which it desired the vessel to be moored for its work. The method of mooring the vessel in those positions was under the sole control of the captain.
At the time of the accident, the vessel was moored with a hawser from the starboard stern bit, located 6 to 8 feet forward of the stern. The hawser ran aft 25 or 30 feet from the bit to the place where it was tied to the platform. The stern of the vessel was placed toward the direction from which the waves were coming.
Some of the welding equipment and supplies were unloaded from the vessel onto the platform, and the work had been in progress for two or three days when the accident occurred. Plaintiff was on the stern of the vessel directing the work of the welder on the platform. For about 45 minutes before the accident, plaintiff had been standing about one foot from the stern and one foot from the starboard rail. While standing in that position, a wave caused the stern of the vessel to drop, and the hawser came over the starboard rail and struck plaintiff on the leg, causing a fracture.
The evidence shows that the swells in the gulf had been running approximately three to four feet in height. No difficulty had been experienced with the hawser prior to the accident. The swell that came in immediately before the accident was larger than usual, and this is what caused the stern of the vessel to drop and allow the mooring line to come over the starboard rail.
 Before discussing the issues, it is appropriate to state the scope of our appellate review. In civil cases involving state law, the appellate courts of Louisiana have constitutional authority to review both the law and the facts. However, a Louisiana appellate court’s review of a jury verdict in a suit under the Jones Act, is the same as that of the Federal Courts. Under Federal law and jurisprudence, an appellate court cannot disturb the finding of fact of a trial jury on the merits unless there is no reasonable evidentiary basis for the jury’s conclusion. See Trahan v. Gulf Crews, Inc., La., 260 La. 29, 255 So.2d 63 (1971) and the cases cited.
*330 WAS PLAINTIFF A SEAMAN?
The first issue is whether the plaintiff was a seaman within the meaning of the Jones Act, 46 U.S.C.A. § 688. The recent case of Barrios v. Louisiana Construction Materials Company, 465 F.2d 1157 (5th Cir. 1972) states the three traditional requirements for qualification as a seaman: (1) There must be a vessel in navigation. (2) The individual must have a more or less permanent connection with the ship. (3) The capacity in which the individual is employed, or the duties which he performs, must contribute to the function of the vessel or to the accomplishment of its mission.
Under these tests, we have little difficulty in concluding that the plaintiff in the present case was a seaman. The State-Race was a vessel in navigation. The plaintiff was living and working on the vessel during the performance of his duties as foreman of the welding crew. The duties which plaintiff was performing contributed to the function or mission of the vessel, which was to assist in the repair of the platform. There was clearly sufficient evidence to support the jury finding that plaintiff was a seaman under the Jones Act.
WAS TAYLOR A JONES ACT EMPLOYER?
In Barrios v. Louisiana Construction Materials Company, supra, the court recognizes there is a substantial conflict in the cases from Federal appellate courts on the question of whether a Jones Act employer must have control of the operation of the vessel to which the injured seaman was attached. Some cases hold that a Jones Act employer must have operational control of the vessel. Other cases allow Jones Act recovery against an employer who does not own or control the vessel but controls only the operation which resulted in the seaman’s injury. In Barrios, the court allowed Jones Act recovery, even though the jury found that the employer did not have operational control over the vessel.
The facts in Barrios were that Williams-McWilliams contracted with The Greater Lafourche Port Commission to construct a flood protection levee. Williams-McWilliams leased a 90-ton dragline from Louisiana Construction Materials Company. The plaintiff, Barrios, had been an oiler on the dragline for Louisiana Construction, so Williams-McWilliams employed Barrios to continue those duties. The dragline was transported to the construction site on a barge owned and controlled by Louisiana Construction. The barge was not leased to Williams-Mc-Williams.
The barge remained at the work site and was used to furnish oil, fuel, equipment and other services for the dragline. While the dragline was operting on the shore, about 500 feet from the barge, it became bogged down in mud. The barge was sent back to secure a second dragline to pull the bogged dragline out of the mud. After the second dragline had been loaded on the barge, and the spuds at each end of the barge were being lifted, one of the spud cables became fouled. While physically pulling on the fouled cable, Barrios sustained an injury to his back.
The jury found that Barrios was a member of the crew of the barge and was a seaman, that he was injured on the barge while in the course of his employment by Williams-McWilliams, that Williams-McWilliams was negligent, and that this negligence was a cause of Barrios’s injuries. Based on these findings, judgment was entered against Williams-McWilliams under the Jones Act.
However, the jury also found that Louisiana Construction Materials Company was the operator of the barge and thus liable to Barrios under the general maritime law, because of the unseaworthiness of the barge. Williams-McWilliams argued that since the jury found it was not the opera *331 tor of the barge, it could not be liable under the Jones Act. The court held that although Louisiana Construction had control over the barge, Williams-McWilliams had control over the operations which resulted in injury to Barrios, and this is sufficient to support Jones Act liability.
We are unable to distinguish Barrios from the present case. In its brief, Taylor states that in Barrios, Williams-Mc-Williams had leased the spud barge from Louisiana Construction, and therefore had control of the vessel, whereas in the present case Mobil Oil had leased the State-Race and Taylor had no control whatever over the vessel. As we read the Barrios decision, it clearly states (465 F.2d 1164) that Williams-McWilliams had leased only the dragline and had not leased the barge, which was being towed by Louisiana Construction’s tug and was under the control of Louisiana Construction. The present case and Barrios are therefore the same in that plaintiff’s employer was not in control of the vessel.
We conclude that under the Barrios decision the defendant Taylor in the present case was a Jones Act employer.
WAS TAYLOR NEGLIGENT?
 The next issue is whether Taylor was guilty of negligence which was a cause of the accident. The district judge’s charge to the jury correctly states the law on employer negligence under the Jones Act as follows:
“We next turn to the question of whether the employer, Taylor’s Welding Service, was negligent within the meaning of the Jones Act.
“In order to recover, the plaintiff must prove that the employer was negligent. And the first question you must consider therefore is: What is negligence ?
“Negligence is the doing of some act that a reasonably prudent person would not do, or the failure to do something a reasonably prudent person would do, under the same or similar circumstances. It is, in other words, the failure to use ordinary care under the circumstances.
“The mere occurrence of an accident, of course, does not raise any presumption of negligence.
“The obligation of an employer under the Jones Act for the safety of seamen is substantially greater than that of an ordinary employer to his employee. The word ‘negligence’ therefore, as used in the Jones Act, which makes the employer of seamen liable for his negligence, must be given a liberal interpretation. It includes any breach of any obligation that the employer owes to seamen, including the obligation of seeing to the safety of the crew.
“Under the Jones Act, if the employer committed, through its officers, agents or employees, some negligent act or omission that played any part, no matter how small, in actually bringing about the injury to David Bell, then you should find that the employer was negligent.
“Negligence under the Jones Act .may consist of a failure to comply with a duty required by law. Employers of seamen have a legal duty to provide their employees with a safe place in which to work. If you find that in this case the plaintiff was injured because the defendant failed to furnish him with a reasonably safe place to work and that the plaintiff’s working conditions could have been made safe through the exercise of reasonable care, then you may find that the defendant was negligent.
“In addition to proving that the employer was negligent as I have previously explained, David Bell must prove that such negligence was a contributing cause of the accident. This brings up the law of ‘causation’.
*332 “Under the Jones Act, an injury is considered caused by an act, or failure to act, when it appears, from a preponderance of the evidence in the case, that the negligent act or omission, played any part, no matter how small, in bringing about or actually causing the injury.”
The evidence shows that Larry Taylor negotiated the contract with Mobil Oil Corporation to repair the offshore platform. Under the agreement, Mobil Oil provided the vessel, State-Race, to transport the men and equipment to the platform and to serve as living quarters and a place of work for the Taylor crew. Plaintiff contends Taylor knew or should have known his employees would be performing work aboard the vessel, and knew or should have known it would be necessary for the plaintiff to stand on the stern of the vessel to supervise the work. It is plaintiff’s position that Mr. Taylor knew or should have known that the vessel would be moored to the platform and he should have given special instructions to the captain to moor the vessel in such a manner as to prevent the mooring lines from coming over the rail, or he should have provided special equipment to protect his employees against this hazard.
Taylor’s contention is that he delegated to plaintiff the duty to take all necessary precautions for the safety of Taylor’s employees. The evidence shows that plaintiff was a competent and experienced oilfield worker. He had been engaged in oil field work for approximately 40 years, the last 15 years of which he worked for Mobil Oil as a field foreman, and much of this last 15 years being devoted to offshore work. Plaintiff had retired from Mobil at the age of 62 and gone to work as a welding foreman for Taylor. During the negotiations, Mobil indicated it would like to have plaintiff supervise Taylor’s work on the platform because Mobil knew plaintiff was well qualified.
Plaintiff’s own testimony shows he understood he was in complete charge of the job, including the safety of the crew, and he felt he was capable of handling any situation that arose. Plaintiff testified as follows:
“Q I see. Did you consider it necessary for Mr. Taylor to give you any instructions as to checking the safety of this boat, STATE RACE?
“A Mr. Taylor and I had worked on similar jobs a number of times. We were both acquainted with the job, and it was kind of — just like you don’t need any instructions to do your job.
“Q Yes sir.
“A Well, that’s the way T was.
“Q Thank you. Well, do I — I gather from what you have just said, you felt you were just as capable as Mr. Taylor to handle any situation that arose ?
“A I think that’s correct; unless it concerns some technical part of welding that I wasn’t versed on.
“Q And to particularly handle any question as to safety ?
“A That’s right.”
We find no reasonable evidentiary basis for the jury’s conclusion that Taylor was negligent. Taylor delegated to plaintiff, a competent and experienced foreman, the duty to take any precautions necessary for the safety of the welding crew. There is no evidence that plaintiff could not or did not perform his duties as to safety. There is no evidence that the vessel was improperly moored. There is no evidence as to any type of special equipment which could have been secured by Taylor or by plaintiff to prevent the hawser from coming over the rail. In the absence of any evidence as to special mooring or special equipment which could have been used to prevent the accident, how can it be con- *333 eluded that Taylor was negligent in failing to furnish such safety precautions ?
Having concluded there is no reasonable evidentiary basis for the jury’s conclusion that Taylor was negligent, it is unnecessary for us to consider whether plaintiff was contributorily negligent or any of the other issues in the case.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Taylor’s Welding Service, Inc., rejecting plaintiff’s demands at his cost. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.